IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| KEITH WEST, | ] |
| **Plaintiff,** | ] |
| vs. | ] Case No: |
| TENNESSEE DEPARTMENT OF VETERANS SERVICES, | ] JURY DEMAND |
| **Defendant.** | ] |

## COMPLAINT

Comes now the Plaintiff, Keith West, by and through counsel and for cause of action will respectfully show to the Court as follows:

## JURISDICTION & VENUE

1. This action involves the application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*. Upon administrative exhaustion, Plaintiff will amend to add claims under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C.A. § 12101, *et seq*. ("ADAAA").This Court has jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

2. The claims asserted in this action arose in Davidson County, Nashville, Tennessee; therefore, proper venue for this action lies within the Middle District of Tennessee pursuant to 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff, Keith West, is an adult male individual and citizen of the United States who resides in Rutherford County, Murfreesboro, Tennessee.

4. At all relevant times, Plaintiff was an employee of the Tennessee Department of Veterans Services ("Defendant" or "TDVS"), within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(A) and the ADAAA.

5. Defendant TDVS is a department of the state of Tennessee and is a Tennessee governmental entity.

6. At all relevant times, Defendant employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year pursuant to 29 U.S.C. § 2611(4)(A) of the Family and Medical Leave Act (FMLA).

## FACTUAL ALLEGATIONS

7. Plaintiff was employed by the State of Tennessee from October 6, 2014 until February 6, 2017.

8. Prior to his employment with Defendants, Plaintiff served in the Army from August 28, 1982 until his retirement on September 1, 2014.

9. Plaintiff ultimately attained the highest enlisted military rank of E-9, or Sergeant Major, in 2004 and spent the final nine (9) years of his career as a Command Sergeant Major.

10. A Command Sergeant Major is responsible for the direction and performance of the personnel in his military unit.

11. Command Sergeants Major are also responsible for logistics; commanding or overseeing drills and training; and overseeing the good order and discipline of enlisted troops.

12. Plaintiff spent twenty-nine (29) of his thirty-two (32) year military career training and/or overseeing the training of members of his unit.

13. He earned more fifty (50) medals and/or commendations, many of which relate directly to his training and/or his oversight over the training of his soldiers.

14. In particular, he received the U.S. Army Commendation Medal five (5) times; the Joint Service Achievement Medial twice; and received the U.S. Army Achievement Medal eleven (11) times- all of which he received in recognition of his training program and how it influenced his soldiers in their performance.

15. Plaintiff brought nearly thirty (30) years of military based training experience to job when he began working for Defendants.

16. Plaintiff's military service also resulted in him being diagnosed with severe chronic Post Traumatic Stress Disorder, severe anxiety disorder and depression.

17. Plaintiff was initially employed by Defendant in the Department of General Services.

18. Plaintiff's initial job was as a training specialist in the Central Procurement Office.

19. In January 2015, Plaintiff applied for an open position as a training officer within the Tennessee Department of Veterans Services.

20. On February 2, 2015, Plaintiff was hired by TDVS as a Training Officer 1.

21. As a Training Officer, Plaintiff's primary duties were to plan, coordinate and execute training for State and County Veteran Service Officers.

22. Approximately seven (7) months later, Plaintiff was promoted to Training Officer 2.

23. As a Training Officer 2, Plaintiff hired, trained and supervised a Training Officer 1.

24. At that time, the TDVS Training Officers were only required to train State and County Veteran Service employees.

3

Case 3:19-cv-00122   Document 1   Filed 02/06/19   Page 3 of 13 PageID #: 3

25. On December 16, 2015, Plaintiff requested a reasonable accommodation allowing him to work from home three (3) days per week to help manage his PTSD and chronic fatigue syndrome.

26. Defendant granted Plaintiff's request allowing him to work from home Monday, Wednesday and Friday.

27. In or around January 2016, Plaintiff learned that *all* Tennessee state employees are required to undergo state mandatory training, but the training was not being conducted, tracked or monitored.

28. Upon learning of this, Plaintiff immediately brought it to the attention of his supervisor, Assistant Commission of TDVS Yvette. Martinez.

29. On or around April 2016, Ms. Martinez asked Plaintiff to develop a training program to conduct, track and monitor the mandatory training for *all* Tennessee state employees.

30. Plaintiff prepared a training program that would mirror the current training program for Veteran Services Officer.

31. In Plaintiff's May 2016 Quarterly Review, Ms. Martinez commended Plaintiff for these efforts stating, "Your training schedule to get state mandated training completed this summer is ambitious, but I know you will accomplish the goals."

32. At the time, the training classes for the state mandated training did not exist so Plaintiff had to wait for the classes to be developed before he could begin teaching the state employees.

33. In July 2016, Plaintiff began to experience worsening symptoms related to his PTSD, anxiety, depression and chronic fatigue syndrome.

34. Plaintiff submitted a letter of resignation on July 12, 2016 citing "continued and worsening health problems associated with military service-connected disabilities."

35. Upon receipt, Ms. Martinez appeared willing to simply accept Mr. West's resignation.

36. Despite citing worsening health problems associated with military service-connected disabilities, Plaintiff was not offered leave under the FMLA.

37. On July 28, 2016, rather than resigning, Plaintiff decided to take a leave of absence to seek medical treatment.

38. Plaintiff requested, and received, a two week leave of absence.

39. On August 2, 2016, TDVS began offering an Alternative Workplace Solutions ("AWS") policy allowing employees of TDVS the option of working from home.

40. The terms of the AWS were much like the terms of the reasonable accommodation Mr. West was already receiving.

41. On August 10, 2016, Plaintiff's physician recommended Plaintiff apply for leave under the Family Medical Leave Act.

42. This was the first time Plaintiff had heard of FMLA leave.

43. That same day, Plaintiff sent an email to Ms. Martinez requesting an in-person meeting to speak with her to discuss his FMLA leave options.

44. On August 11, 2016, Plaintiff's submitted FMLA forms requesting leave from August 11, 2016 through September 9, 2016.

45. On August 17, 2016, Plaintiff received a letter approving his FMLA leave.

46. While on FMLA leave, Ms. Martinez repeatedly required Plaintiff to perform work throughout his leave.

47. On September 6, 2016, Plaintiff's physician requested Plaintiff's FMLA leave be extended an additional four (4) weeks.

48. On September 12, 2016, Plaintiff received a letter from TDVS approving his FMLA leave extension through October 7, 2016.

49. On October 6, 2016, Plaintiff notified TDVS he had been cleared to returned to work effective October 11, 2016.

50. That same day, TDVS HR Analyst Dolores Keene, notified Plaintiff he must provide a written release from his doctor in order to return to work.

51. On October 7, 2016, Plaintiff's physician provided TDVS the release to return to work.

52. The October 7, 2016 release also recommended Plaintiff work from home full time to help mitigate the effects of his PTSD.

53. Based on this request, TDVS requested additional documentation from Plaintiff's physician to support the request he work from home full time.

54. Specifically, TDVS sent Plaintiff's physician a "Request for information from Medical Provider for ADAAA Accommodation" as well as a copy of Plaintiff's job description.

55. On October 17, 2016, having reviewed Plaintiff's job description, Plaintiff's physician provided her recommendations on the "Request for information from Medical Provider for ADAAA Accommodation" form.

56. Specifically, Plaintiff's physician stated, in relevant part:

> "In review of Mr. West's essential functions he is capable of carrying out all of the duties with the exception of need for environments that are conducive to concentration without interruption. During flare ups of symptoms, Mr. West benefits from isolative environments where appropriate for maximum focus and productivity."

6

Case 3:19-cv-00122   Document 1   Filed 02/06/19   Page 6 of 13 PageID #: 6

"Recommend Mr. West to continue his current work schedule of 5 days weekly however on days of campus interaction he be allowed to return home to continue duties via alternative methods."

"Any methods such as teleconference, electronic mail and phone will be beneficial in allowing Mr. West to perform his duties in a persistently controlled environment."

57. On October 18, 2016, TDVS conducted a conference call between Plaintiff, Ms. Martinez, Human Resource Analyst Dolores Keene, Deputy Commissioner Mark Breece, and General Counsel John Waddell, to discuss Plaintiff's accommodations.

58. On the call, TDVS executives claimed the form prepared by Plaintiff's physician contained some responses which did not clearly indicate limitations.

59. Plaintiff was then informed TDVS could not support his accommodation of working from home five (5) days per week.

60. TDVS asked Plaintiff if he was capable of working under the accommodations previously in place, allowing him to work from home Monday, Wednesday and Friday.

61. Plaintiff reluctantly agreed he was capable of working under the prior accommodations.

62. TDVS drafted a memorandum indicating Plaintiff would "continue to work AWS Home on Mondays, Wednesdays and Fridays, 8am-4:30pm. He would be in the office on Tuesdays and Thursdays from 6am to 2:30pm."

63. The memorandum also indicated:

"In summary, Keith confirmed he is not requesting work schedule modifications at this time. As in the past, Keith would provide a doctor's note if work schedule modification are requested as they pertain to the condition addressed in the confidential memorandum received earlier this week."

64. Plaintiff returned to work on October 20, 2016.

7

65. As a result of this delay in reinstating Plaintiff, he was required to utilize seven (7) days of FMLA despite being ready and willing to work.

66. On October 31, 2016, Plaintiff learned Mr. Martinez had performed his Annual Review on September 30, 2016, while he was still on FMLA leave.

67. In the audit history for the review, the record reflected Plaintiff acknowledged the review on September 30, 2016.

68. Plaintiff was neither aware the review had been conducted nor given the opportunity to review and/or respond to the Annual Review.

69. According to State policy, if an employee chooses to appeal the results of an annual review, it must be submitted in writing within fourteen (14) days.

70. Since Plaintiff did not learn about his annual review until October 31, 2016, his time to submit an appeal had lapsed.

71. Plaintiff immediately requested a meeting with Ms. Martinez to discuss the review.

72. On November 3, 2016, Plaintiff, Ms. Martinez and Deputy Commissioner Mark Breece had a meeting to discuss the September 30, 2016 review.

73. Plaintiff asked Mr. Martinez why she submitted his evaluation while he was on FMLA.

74. Plaintiff also asked why Ms. Martinez signed the evaluation indicating she had conducted a review with Plaintiff.

75. Ms. Martinez became defensive stating she had to submit the evaluation in order for Plaintiff to receive an annual raise.

76. Plaintiff also asked why he was rated "marginal" for time periods while he was on FMLA leave.

77. Ms. Martinez stated Plainitff had submitted certain sub-par documents required for an October proficiency training conducted by the State.

78. Plaintiff told Ms. Martinez someone else must have given her slides because he was on FMLA leave at that time.

79. Ms. Martinez then made the comment "the old Keith would have done better."

80. Plaintiff asked Ms. Martinez if she was referring to the time before Plaintiff disclosed his health conditions.

81. Ms. Martinez said "Yes."

82. Ms. Martinez also informed Plaintiff he would now be rated on a new system based on the accuracy of his PowerPoint presentations.

83. Specifically, Ms. Martinez informed Plaintiff his submissions must be no less than 80% accurate.

84. When asked how the 80% accuracy would be assessed, Ms. Martinez said she would make the determination.

85. Plaintiff was the only individual held to Ms. Martinez' purely subjective rating system.

86. On numerous occasions, Plaintiff sought clarity on the subjective rating system but received no feedback.

87. On November 10, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging Ms. Martinez discriminated against Plaintiff based on his disability and created a hostile work environment.

88. After filing the EEOC charge, Ms. Martinez' demeanor toward Plaintiff became more hostile.

9

Case 3:19-cv-00122   Document 1   Filed 02/06/19   Page 9 of 13 PageID #: 9

89. On November 18, 2016, Ms. Martinez requested Plaintiff acknowledge all emails sent to him by Ms. Martinez.

90. Plaintiff complied with this request and acknowledged all emails in a timely manner.

91. Despite this, Ms. Martinez informed Plaintiff he was not acknowledging the email in accordance with her expectations.

92. On December 2, 2016, Plaintiff had a meeting with Commissioner Many-Bears Grinder and Deputy Commissioner Mark Breece.

93. During this meeting, the parties discussed an alleged issue with communications between Ms. Martinez and Plaintiff.

94. During this meeting, Plaintiff stated he felt Ms. Martinez was retaliating against him due to his disability and for complaining about how Ms. Martinez handled his annual review.

95. During this meeting, it was determined that the training division of TDVS would answer to Mr. Breece until February 1, 2017.

96. On December 22, 2016, Plaintiff again requested, and was approved for, four (4) weeks of FMLA leave.

97. Despite being on FMLA, Plaintiff was required to work from home during his leave.

98. On January 17, 2017, Plaintiff notified TDVS he was ready to return to work and asked for the necessary documents for his physician to execute.

99. On January 18, 2017, Ms. Keene informed Plaintiff she must have a note from his physician releasing him to work before he can return.

100. On January 19, 2017, Plaintiff informed Ms. Keene that his physician is out of town until February 1 and she is the only person who can release him to work.

101. On February 1, 2017, Plaintiff provided the release from his physician allowing him to return to work and requesting TDVS continue to allow him to work from home full time.

102. On February 2, 2017, Ms. Keene notified Plaintiff he had been approved to return to work.

103. On February 3, 2017, a meeting was held between Plaintiff, Commissioner Grinder, Ms. Martinez, General Counsel John Cressman, and Dolores Keene.

104. During the meeting, Plaintiff was informed the TDVS AWS benefit would be rescinded effective February 6, 2017.

105. Plaintiff was informed he would no longer recieve his reasonable accommodation of working from home three (3) days per week.

106. Plaintiff had received this reasonable accommodation since December 2015, approximately eight (8) months prior to the AWS being provided to TDVS.

107. Plaintiff received this benefit as a reasonable accommodation for his disabilities.

108. Plaintiff was also told he would once again be reporting to Ms. Martinez upon his return.

109. Defendants' refusal to continue offering Plaintiff a reasonable accommodation constructively discharged the Plaintiff.

110. On February 6, 2017, Ms. West tendered his resignation.

111. After tendering his resignation, Plaintiff filed an amended charge of discrimination with the EEOC alleging Defendants retaliated against him based on his disability and for filing the first EEOC Charge.

112. Specifically, Plaintiff believes Defendants retaliated against him by taking away his reasonable accommodation and placing him back under the supervision of the manager he had previously filed a complaint against.

113. Defendants discriminated and retaliated against Plaintiff based on his actual and/or perceived disability.

114. Defendant also interfered with Plaintiff's rights under the FMLA and retaliated against him for utilizing FMLA leave.

115. Upon receipt of the right to sue from the Department of Justice, Plaintiff will amend this complaint to add claims arising out of the ADAAA.

## COUNT I – VIOLATION OF FAMILY AND MEDICAL LEAVE ACT (INTERFERENCE AND RETALIATION)

116. Plaintiff hereby re-alleges the foregoing paragraphs as though fully set forth herein.

117. Defendant, a public agency, qualifies as an "employer" as defined in the FMLA, 29 U.S.C. § 2611(4)(a)(iii) and employed over fifty (50) or more employees within a seventy-five (75) mile radius from the location in which the Plaintiff worked.

118. Plaintiff was an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), as he had been employed continuously by Defendant for over a twelve-month period and worked at least 1,250 hours of service in the prior twelve-month period.

119. There was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(1).

120. Defendant interfered with Plaintiff's attempt to exercise his right of entitlement to leave under the FMLA, pursuant to 29 U.S.C. § 2615(a).

121. Defendant retaliated against Plaintiff after he exercised his right of entitlement to leave under the FMLA, pursuant to 29 U.S.C. § 2615(a).

122. Defendant is responsible and liable under the FMLA, 29 U.S.C. § 2617(a).

123. Defendant, in constructively discharging Plaintiff for exercising his right of entitlement to leave under the FMLA, willfully violated the anti-interference and retaliation provisions of the FMLA, 29 U.S.C. § 2615.

124. As a result, Plaintiff is entitled to recover his damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

**WHEREFORE**, Plaintiff requests this court enter judgment in favor of the Plaintiff and against Defendant, for:

(1) all amounts of wages that Plaintiff should have received under the state and federal law but for Defendant's willful violation of his rights, plus an equal amount in liquidated damages pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(1)(A); and

(2) all reasonable attorney's fees, costs and interest pursuant to state and federal law;

(3) any such other legal or equitable relief as may be appropriate or to which he may be entitled under federal or state law.

Respectfully Submitted,

**THE EMPLOYMENT LAW GROUP**

**/s/ JONATHAN A. STREET_____**
**JONATHAN A. STREET, BPR No. 021712**
**BRANDON HALL, BPR No. 034027**
525 4th Avenue South
Nashville, TN 37210
(615) 850-0632

*Attorneys for Plaintiff*